**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 07-CR-20608

RICHARD LABELLE,

    Defendant.
                                              /

**OPINION AND ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS ILLEGALLY SEIZED EVIDENCE"**

Before the court is Defendant Richard LaBelle's "Motion to Suppress Illegally Seized Evidence." The motion has been fully briefed and the court conducted a hearing on the matter on April 14, 2008. During the hearing, the court heard testimony from Auburn Hills Police Officers Todd Raskin and Segeant Ryan Gagnon. For the reasons discussed below, the court will deny the motion.

**I. FINDINGS OF FACT**

On May 1, 2007, at approximately two o'clock in the morning, Defendant was observed walking east on Walton Boulevard in the City of Auburn Hills, Michigan, by Officer Raskin. It was raining, and Defendant was wearing only a shirt, shorts and shoes and carrying a duffel bag. Defendant was walking in an industrial area of the city that Officer Raskin was aware did not generally have pedestrian traffic at night and generated some criminal activity. Based on his observations, Officer Raskin stopped his patrol car and approached Defendant, who paused to talk.

During this "investigatory stop," Officer Raskin asked Defendant where he was going, where he was coming from and why he was walking. Defendant answered that he was coming from Pontiac and heading home. He stated that he was walking because he did not have a car or a valid driver's license. Officer Raskin also asked what Defendant had in his duffel bag and if he may look in it. Defendant replied that the bag contained clothes and declined to allow Officer Raskin to search it. Finally, Officer Raskin asked Defendant for his name. Defendant identified himself as "Christopher Labelle," born on September 22, 1966. Defendant was then told he was free to go. In total, the conversation lasted less than three minutes.

After returning to his vehicle, Officer Raskin investigated the name and date of birth given to him by Defendant. Multiple searches showed no record of any person within five years of the date of birth and name provided by Defendant. Based on this investigation, Officer Raskin determined that the information given by Defendant was false and decided that further investigation was required. He requested another officer, Sergeant Gagnon, to assist him in stopping Defendant.

Based on his earlier conversation with Defendant, Officer Raskin believed that Defendant would have to cross the I-75 freeway on his way to his house. Using this information, Officer Raskin set up surveillance on the closest highway overpass believing that Defendant would likely pass that way. Sergeant Gagnon was positioned on the east side of I-75 on Phillips Road. However, rather than walk over the overpass, Defendant walked to the north side of the overpass, down a wooded embankment, across four lanes of highway traffic and up a wooded embankment on the other side. Sergeant Gagon observed the Defendant running on his hands and knees in waist-high

grass and weeds as he was scurrying up the east embankment. Sergeant Gagnon ordered Defendant to stop. Defendant began to run, but was caught by Sergeant Gagnon, who observed that Defendant no longer had the duffel bag in his possession.

After Officer Raskin arrived, he asked Defendant where the duffel bag was. Defendant replied, "it's down there" referencing the highway but then added "I don't know." Sergeant Gagnon then re-traced Defendant's route over the highway and found Defendant's duffel bag on the western embankment. Officer Raskin confirmed that it was the same bag he had observed Defendant carrying earlier.

Officer Raskin then opened the duffel bag and found a white binder containing many pages of pornographic pictures of adults with photographs and newspaper clippings of children, pictures of children's heads pasted onto adult pornographic pictures, pictures of children with pornographic adult genitalia pasted onto the child's body and newspaper articles about attempted and completed child abductions. He also found a yellow notebook containing written notes and pornographic pictures, one of which was of a female child. Next to the picture was a handwritten, sexually graphic, note.

After completing the search of the duffel bag, Officer Raskin read Defendant his Miranda rights. At that time Defendant chose not to waive his rights. Sergeant Gagnon then drove Defendant to the City of Rochester and dropped him off within walking distance of his home per Defendant's request. The duffel bag and other items found on Defendant's person were secured in the Auburn Hills Police Department evidence room.

Later that day, Auburn Hills Police Detective Ron Tuski was assigned Defendant's case and examined the contents of the duffel bag. Detective Tuski

photographed the contents of the bag and submitted seven of the pictures to the Oakland County Medical Examiner's Office. The Medical Examiner's Office determined that all of the photos submitted depicted children less than eighteen years of age. Using this information, a warrant was issued on May 10, 2007 to search Defendant's residence for child sexually abusive material. Upon execution of the warrant, child pornography in the form of digital and print photos as well as videos on VHS and compact disc were discovered.

Defendant was arraigned on May 11, 2007 for three counts of child sexually abusive activity in violation of MCL 750.145(c)(2) and three counts of possession of child sexually abusive material in violation of MCL 750.145(c)(4)(A). Defendant was bound over for trial following a preliminary exam conducted on May 31, 2007.

## II. DISCUSSION[1]

### A. *Terry* Stop

A police officer may "approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). The officer "must be able to point to specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. In reviewing an investigatory stop, the court must examine whether there was a proper basis for the stop and whether the degree of the intrusion was reasonable in light of the circumstances. *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005).

---

[1] This Discussion section includes further findings of fact as well as an application of the relevant law to the facts.

Here, Officer Raskin observed Defendant walking in the rain at two o'clock in the morning, wearing nothing but a shirt, shorts and shoes.  Defendant was walking in an industrial area that typically did not have pedestrian traffic at night and was carrying a duffel bag large enough to contain something of value.  Officer Raskin testified that in his experience as a police officer, the particular area in which Defendant was observed generated some criminal activity at night, including larcenies from motor vehicles.  The location of an investigatory stop in a high-crime area is relevant in determining the constitutionality of the stop.  *Illinois v. Wardlow*, 528 U.S. 119 (2000); *Adams v. Williams*, 407 U.S. 143 (1972).  Although the area does not seem to have been a *high* crime area, it did generate some crime and it was somewhat curious that Defendant was walking in the rain in the middle of the night.  Officers may "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (*citing United States v. Cortez*, 499 U.S. 411, 418 (1981)).  In examining the totality of the circumstances, Officer Raskin was justified in approaching Defendant.

Furthermore, during the investigatory stop, Officer Raskin asked Defendant where he was going, from where he was coming, and what was in the duffel bag Defendant was carrying.  Officer Raskin also asked Defendant if he could look inside the bag.  Defendant, appearing to be intoxicated, refused this request by the officer and Defendant's refusal was honored.  Finally, Officer Raskin asked for Defendant's name to which Defendant provided what was ultimately a false name.  In all, the stop lasted less than three minutes.  "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street . . . by asking him if he is

willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida v. Royer*, 460 U.S. 491, 497 (1983). Additionally, "questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 186 (2004). Here, there is no indication that the interaction between Defendant and Officer Raskin was anything but short, courteous and voluntary. As such, the scope of the investigatory stop was reasonable. Because the initial stop of Defendant was proper and the scope of the stop was reasonable, no Fourth Amendment rights were violated.

Moreover, even if the initial *Terry* stop had been unreasonable, the stop did not lead to the seizure of the relevant duffel bag. At the end of the *Terry* stop, Defendant was completely free to go, and indeed left with the duffel bag in his possession. The later seizure of the duffel bag was separate from, and not dependant on, the initial stop. *See United States v. Martin,* 399 F.3d 750, 753 (6th Cir. 2005) ("In the process of fleeing, he discarded his revolver. Because he had not been seized when he discarded his revolver, . . . he abandoned it, and it is irrelevant whether police misconduct caused the abandonment."). Thus, even if the court were to find a violation of Defendant's Fourth Amendment right in connection with the *Terry* stop, it would have no bearing on the suppression of the duffel bag.

### B. Abandonment

Before a defendant may claim a violation of his Fourth Amendment right against unreasonable search and seizure, the defendant must demonstrate that he or she had a "legitimate expectation or privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). However, when a defendant abandons property, he forfeits any legitimate

expectation of privacy that he had in that property.  *Abel v. United States*, 362 U.S. 217 (1960).  Determining abandonment is primarily a question of intent and may be inferred from words, acts and other objective facts.  *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973).

In *United States v. Collis*, 766 F.2d 219 (6th Cir. 1985), the defendant was observed carrying a shoulder bag through an airport when he was approached by a Drug Enforcement Agent.  *Id.* at 220.  The agent identified himself and asked the defendant if he may question him, to which the defendant consented.  *Id.*  After a series of questions, the defendant became nervous and fled the agent.  *Id.* at 221.  As he was fleeing, the defendant threw the shoulder bag over a fence.  *Id.*  The defendant was subsequently arrested and the bag was recovered and searched.  *Id.*  The Sixth Circuit held that the defendant had abandoned the bag when he threw it over the fence and therefore, he lacked standing to challenge the search of the bag.  *Id.* at 222.

Likewise, in *United States v. Oswald*, 783 F.2d 663 (6th Cir. 1986), the defendant was transporting cocaine in a metal briefcase from Florida to Michigan when his vehicle caught fire.  *Id.* at 664.  Rather than stay with the vehicle or attempt the get assistance, the defendant hitched a ride with a passing motorist and left the area.  *Id.*  Shortly thereafter, police and fire personnel arrived on the scene to address the burning vehicle.  *Id.*  After the fire had been extinguished, and in accordance with normal police policy, an officer took control of the metal suitcase for safekeeping.  *Id.* at 665.  In due course, the cocaine was discovered and the defendant arrested.  *Id.*

In finding that the cocaine in the metal briefcase had been abandoned, the Sixth Circuit analogized to the case of *United States v. Tolbert*, 692 F.2d 1041 (6th Cir. 1982)

in which the defendant's disclaimer of ownership of baggage in an airport constituted abandonment. In *Oswald*, the Sixth Circuit held that "Oswald's flight from the scene of the burning automobile, without any visible effort to retrieve the car in a reasonable time or see to the safety of its contents, strikes us as the functional equivalent of Miss Tolbert's denial that she had any luggage in the airport." *Oswald*, 783 F.2d at 666. Furthermore, the court reasoned that "not only will privacy expectations vary with the type of property involved, . . . but they will vary with the location of the property," and found that "[o]ne who chooses to leave luggage in an unlocked burned-out automobile on the side of a highway in the country can fairly be though to have a much lower expectation of privacy." *Id.* at 666-67 (internal citation omitted).

Here, Defendant's actions are highly analogous to those of the defendants in both *Collis* and *Oswald*. In this case, Officer Raskin testified that after he established that Defendant had given him a false identification, he set up surveillance on the only overpass over I-75 knowing that Defendant would have to pass that way. Officer Raskin did see Defendant walking towards the overpass, but instead of using the overpass, Defendant opted to walk down a wooded embankment, cross four lanes of highway traffic, and walk up a wooded embankment on the other side. It was later discovered that it was while he was in the wooded area that Defendant abandoned his shoulder bag. Furthermore, after crossing the interstate, Sergeant Gagnon testified that he saw Defendant running on his hands and knees in an attempt to stay low and that Defendant continued to run after being ordered to stop forcing Sergeant Gagnon to run and catch him. The aggregate of these actions can only be understood as an attempt by Defendant to avoid further contact with the police and distance himself from the

8

duffel bag. Much like the defendant in *Collis*, in this case Defendant was not yet under arrest, but abandoned his shoulder bag in an attempt to separate himself from his property. Also, like the defendant in *Oswald*, Defendant here abandoned his property on the side of a public highway where anyone may happen upon it. The location of Defendant's duffel bag suggests that he intended to discard it. *See United States v. Dillard*, 78 F. App'x 505, 510 (6th Cir. 2003) (citing cases where the location of object in question helps to determine whether it was abandoned).

Contrary to defense counsel's suggestion, it is not logical to infer that Defendant intended to store his bag for later collection. This is particularly true given that the bag, containing primarily paper products, would be exposed to the elements. It strains credulity that Defendant would store his non-durable collection of newspaper articles and papers, on a rainy night, on the side of a highway in a small wooded area. In any event, even if Defendant intended to later return and reclaim ownership of the bag, "abandonment is not negated by 'the feeble hope of re-acquisition.'" *Oswald*, 783 F.2d at 667 (quoting *United States v. Williams*, 569 F.2d 823, 826 (5th Cir. 1978)).

For these reasons, the court finds that Defendant intended to abandon his shoulder bag. As such, no violation of Defendant's Fourth Amendment right occurred in the search of the duffel bag.

### III.  CONCLUSION

IT IS ORDERED that Defendant's "Motion to Suppress Illegally Seized Evidence" [Dkt. # 11] is DENIED.

S/Robert H. Cleland
                                            ROBERT H. CLELAND
                                            UNITED STATES DISTRICT JUDGE

Dated: May 2, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 2, 2008, by electronic and/or ordinary mail.

                                            S/Lisa Wagner
                                            Case Manager and Deputy Clerk
                                            (313) 234-5522