# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                       Case No. 07-CR-20608

RICHARD LaBELLE,

    Defendant.

                                                       /

## OPINION AND ORDER DENYING DEFENDANT'S
## "MOTION TO SUPPRESS ILLEGALLY SEIZED EVIDENCE"

Before the court is Defendant Richard LaBelle's "Motion to Suppress Illegally Seized Evidence," filed on July 9, 2008. Having reviewed the briefs, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

## I. BACKGROUND

On May 1, 2007, at approximately 2:00 a.m., Officer Todd Raskin of the Auburn Hills Police Department observed Defendant Richard LaBelle walking in an industrial area in the City of Auburn Hills, Michigan. It was raining and LaBelle was wearing only a shirt, shorts and shoes and carrying a duffel bag. The area did not typically have pedestrian traffic and was known for generating some criminal activity. Officer Raskin initiated an "investigatory stop" and LaBelle declined to show him the contents of a duffel bag. Soon thereafter, the stop concluded. Officer Raskin then determined that LaBelle provided false information and requested assistance from Sergeant Ryan Gagnon to locate and apprehend LaBelle.

After a brief apparent attempt to elude police, LaBelle was apprehended by Sergeant Gagnon. Sergeant Gagnon retraced LaBelle's steps and discovered his duffel bag on an embankment along Interstate Highway 75 ("I-75"). Officer Raskin opened the duffel bag and found a white binder containing several pages of pornographic pictures of adults with photographs and newspaper clippings of children, pictures of children's heads pasted onto adult pornographic pictures, pictures of children with pornographic adult genitalia pasted onto the child's body and newspaper articles about attempted and completed child abductions. Officer Raskin also found a yellow notebook containing written notes and pornographic pictures, one of which was of a female child. Next to the picture was a handwritten, sexually graphic note. The contents of the duffel bag gave rise to the first of two counts in an indictment against LaBelle for possession of child pornography pursuant to 18 U.S.C. § 2252A(a)(5)(B), (b)(2). Following an evidentiary hearing, this court upheld the May 1 stop and seizure of LaBelle's duffel bag. (5/2/2008 Order.)

Following LaBelle's May 1, 2007 arrest, Auburn Hills Police Detective Ron Tuski was assigned LaBelle's case and examined the contents of the duffel bag. Detective Tuski photographed the contents of the bag and submitted seven of the pictures to the Oakland County Medical Examiner's Office, which determined that all of the photos submitted depicted children less than eighteen years of age. Using this information, Detective Tuski filed an affidavit in Oakland County Court on May 9, 2007 to obtain a warrant to search LaBelle's residence.

In the affidavit, Detective Tuski stated that there was probable cause to search LaBelle's residence for "Child Sexually Abusive Material." (7/9/2008 Mot. Ex. 1 at ¶ 4.)

2

Detective Tuski first detailed his ten years of experience and training in the investigation of sexual and computer-oriented crimes. (*Id.* at ¶ 3.) The affidavit noted LaBelle's multiple misdemeanor charges in 2004 for possession of child sexually abusive material and the use of a computer to commit crime and further stated his status as a registered sex offender. (*Id.* at ¶ 4(D)(1).) Detective Tuski also laid out the facts surrounding LaBelle's May 1, 2007 arrest and catalogued in detail the contents of the pornographic collection found in his duffel bag. (*Id.* at ¶ 4(C).) Detective Tuski then wrote a paragraph outlining how, in his experience, "the preferential molester" often builds and maintains such pornographic collections. (*Id.* at ¶ 4(D)(10).) The affidavit concluded that "due to the above information and investigation . . . there is sufficient evidence learned that Richard LaBelle has a pattern of illicit behavior involving the Possession and/or Production of Child Sexually Abusive Materials." (*Id.* at ¶ 4(D)(12).)

The warrant was issued on May 10, 2007. Upon execution of the warrant, child pornography in the form of digital and print photographs as well as videos were discovered at LeBelle's residence. The second count in the indictment relates to the materials seized in execution of the search warrant. LaBelle asserts that the affidavit provided by Detective Tuski to obtain a search warrant for his residence failed to establish probable cause that the evidence sought was present in his home. (7/9/2008 Mot. at 1.) Accordingly, LaBelle argues that the court should suppress the evidence obtained on May 10, 2007 because the police seized it in violation of his Fourth Amendment right against illegal search and seizure.

## II. STANDARD

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

In determining whether an affidavit establishes probable cause,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that a magistrate had a substantial basis for concluding that probable cause existed.

*United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). An affidavit must contain "particularized facts," *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006), and a "nexus between the place to be searched and the evidence sought," *Carpenter*, 360 F.3d at 594 (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Courts must "insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *McPhearson*, 469 F.3d at 524 (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *overruled on other grounds*, *Gates*, 462 U.S. at 238). However, a magistrate's probable cause determination "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Evidence seized without probable cause violates the Fourth Amendment and may be suppressed by the reviewing court. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its

4

use in criminal proceeding against the victim of the illegal search and seizure." *Carpenter*, 360 F.3d at 595 (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). Even if a reviewing court concludes that a warrant lacked probable cause, however, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The Sixth Circuit has previously applied *Leon* "in cases where [it] determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *Id.* at 596.

The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *McPhearson*, 469 F.3d at 525 (quoting *Leon*, 468 U.S. at 922-23, n.23). Courts must examine the affidavit "for particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions." *Id.*, 469 F.3d at 526. Pursuant to *Leon*, the Sixth Circuit has ruled that the good-faith exception will not apply in four specific situations:

> (1) where the affidavit contains information the affiant knows or should have known to be false; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit; (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

*United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). "Determining whether the affidavit is so bare bones as to preclude application of the good-faith exception is a

less demanding inquiry than the one involved in determining whether the affidavit provided a 'substantial basis' for the magistrate's conclusion of probable cause." *McPhearson*, 469 F.3d at 526.

### III.  DISCUSSION

LaBelle argues that the search warrant obtained by state officers for his residence was legally insufficient and that the court should suppress the evidence discovered as a result of the search warrant. (7/9/2008 Mot. at 1-2.) In his motion, LaBelle relies heavily on the Ninth Circuit's analysis in *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990).[1] For the reasons stated below, LaBelle's reliance on *Weber* is misplaced.

#### A.  Probable Cause

LaBelle argues that Detective Tuski's affidavit failed to establish probable cause that the evidence sought was present at his residence. (7/9/2008 Mot. at 1.) In *Weber*, United States Customs Service agents targeted the defendant for investigation following the seizure of a parcel at his address which apparently depicted the sexual exploitation of children. 923 F.2d at 1340. Customs could not determine whether the defendant had ordered the materials or whether they had been sent unsolicited. *Id.* Twenty months after the initial seizure, Customs sent the defendant an undercover test advertisement containing the name and address of a fictitious distributor of photographs depicting minors engaged in sexually explicit conduct. *Id.* The defendant placed an order for four photographs, which were later delivered to the house by a Customs agent.

---

[1] The Ninth Circuit's holding is of course not binding on this court; nor does the court find its analysis to be particularly persuasive. Even under *Weber*, however, the court would deny LaBelle's motion pursuant to the analysis above.

6

*Id.* Based on these facts, Agent Burke stated in his affidavit that agents would find the four photographs from the "controlled delivery." *Id.*

Agent Burke also wrote a "general description of the proclivities of pedophiles" in an attempt to establish probable cause that "[b]ooks, magazines, pamphlets, photographs, negatives, films, video tapes, and undeveloped films depicting minors under the age of 18 years engaged in sexually explicit conduct" would be discovered at the defendant's residence. *Id.* at 1340-41. The description was based on Burke's own experience and training in child pornography investigations as well as discussions with other agents, particularly Detective Dworin of the Los Angeles Police Department. *Id.* at 1341. Agent Burke never stated in his affidavit that Dworin was familiar with the defendant's case, nor did Burke specifically state that the defendant was probably a "child molester," "pedophile," or "collector of child pornography." *Id.* The court stressed that the affidavit failed to specifically link the defendant to the general description of child molesters and the evidence sought:

> It is important to note that nowhere in Burke's affidavit is there even a conclusory recital that the evidence of Weber's demonstrated interest in child pornography-consisting of one proven order-places him in the category of those pedophiles, molesters, and collectors about whom Dworin has expertise.

*Id.* The warrant was signed and executed and agents found the four photographs that the defendant had ordered in addition to magazines and advertising brochures from overseas child pornography suppliers. *Id.*

The defendant in *Weber* was charged with two counts of receipt of child pornography. *Id.* Count I charged him with receiving the materials sent to him by Customs agents. *Id.* Count II charged him with receiving the other materials seized as

7

a result of the search warrant. *Id.* at 1341-42. The defendant moved to suppress the evidence that gave rise to Count II because the warrant "was not based on probable cause" and "lacked particularity," but the district court denied the motion. *Id.* at 1342.

The Ninth Circuit reversed the district court, holding that Agent Burke's affidavit "did not provide a substantial basis for probable cause." *Id.* at 1343. Based on the information possessed by Agent Burke when he swore out his affidavit, the court reasoned that finding probable cause for the materials seized in connection with Count II "would be to justify virtually any search of the home of a person who has once placed an order for child pornography-even if he never receives the materials ordered." *Id.* at 1344. The court rejected the government's contention that the expert testimony in the affidavit made the search reasonable: "if the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class." *Id.* at 1345. The court considered Agent Burke's affidavit "foundationless" because it merely "consisted of boilerplate recitations" and had "not a whit of evidence" that the particular defendant was a child molester. *Id.* In concluding that the warrant was "broader than could be justified," *Id.* at 1346, the court reasoned:

> Had agent Burke taken the time and conscientiously drafted an affidavit tailored to what he knew about Weber rather than submitting an affidav
> it describing generally information about different types of perverts who commit sex crimes against children, he might have realized that he did not know enough about Weber to state that there was reason to believe that Weber was one of those "types" described or possessed any of the habits ascribed to such types. He might have known that a blunderbuss warrant was unjustified.

*Id.* at 1345.

LaBelle argues that, based on the ruling in *Weber*, there was no probable cause to justify the search warrant executed on May 10, 2007. (7/9/2008 Mot. at 7.) He asserts that a large portion of Detective Tuski's affidavit was "merely a recitation of information" he learned in his training and was not relevant to LaBelle or a search of his apartment. (*Id.* at 6.) Specifically, LaBelle points to the portion of the affidavit in which Detective Tuski described the general tendencies of "the preferential molester." (7/9/2008 Mot. Ex. 1 at 6.) LaBelle asserts that, like the affidavit in *Weber*, Tuski's affidavit is too broad because it contains "boilerplate" language and "is not related to the Defendant in any fashion." (7/9/2008 Mot. at 7.) LaBelle suggests that "nowhere in the affidavit does Tuski ascribe to Defendant any prior or current history as a person who engages in sexual activity with a child." (*Id.*)

LaBelle's characterization is inaccurate, however, as Detective Tuski's affidavit is easily distinguishable from the faulty affidavit in *Weber*. First, unlike the affiant in *Weber*, Detective Tuski outlined the defendant's prior criminal history as a sex offender. (7/9/2008 Mot. Ex. 1 at 4.) Detective Tuski also outlined in detail the facts that led to LaBelle's arrest on May 1, 2007. (*Id.* at 2-3.) Unlike the defendant in *Weber*, LaBelle was apprehended with an extensive collection of pornographic material before a search warrant was issued. (*Id.* at 4-5.) Detective Tuski stated that LaBelle's notebook collection contained numerous pornographic images, including depictions of nude minor females, cut out from magazines. (*Id.*) Tuski also provided a detailed inventory of materials found in LaBelle's binder, including photographs of prepubescent children that had been altered by adding cut out images of adult genitalia. (*Id.* at 5.) The affidavit stated that some of the materials in the binder, including newspaper articles with

9

attached pornographic images and vulgar written statements, dated back as far as 2002. (*Id.*) Immediately following the extensive description of LaBelle's collection, Detective Tuski wrote a relatively brief paragraph explaining how preferential molesters often maintain such collections. (*Id.* at 6.) For example, Detective Tuski wrote: "[t]he preferential molester will constantly add to the collections, and will keep the collection for years while adding to it. The collections are usually neat and orderly, and are kept in computers, photo albums, binders, dairies, etc." (*Id.*) Detective Tuski concluded

> [t]hat due to the above information and investigation, including but not limited to the previous police reports as documented by the Michigan State Police, that there is sufficient evidence learned that Richard LaBelle has a pattern of illicit behavior involving the Possession and/or Production of Child Sexually Abusive Materials.

(*Id.* at 6.)

By extensively detailing LaBelle's prior criminal history as a sex offender and his collection of pornographic materials, Detective Tuski laid a solid foundation that LaBelle fit the profile of the preferential molester. Furthermore, Detective Tuski was familiar with LaBelle's case and explicitly stated that this particular defendant exhibited the characteristics and tendencies of a molester. By the *Weber* standard, Detective Tuski's affidavit established sufficient probable cause that LaBelle was a preferential molester and that evidence of a crime would be found at his residence.

Detective Tuski's affidavit also establishes probable cause according to the binding Sixth Circuit standard. The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Carpenter*, 360 F.3d at 594. Tuski's affidavit provided an extensive array of "particularized facts," *McPhearson*, 469 F.3d at 524, and effectively established a nexus

between the place to be searched and the evidence sought, *Carpenter*, 360 F.3d at 594. Nothing suggests that the magistrate failed to make a practical, common-sense decision given the specific circumstances and extensive facts laid out in the affidavit. *See id.* For the foregoing reasons, the court concludes that the magistrate had a substantial basis for finding that probable cause existed to search LaBelle's apartment, and his motion to suppress must be denied.

### B. Good-Faith Exception

Even if the court found that the magistrate erred in concluding that the affidavit was sufficient to establish probable cause, the good-faith exception of *Leon* applies and LaBelle's motion to suppress must also be denied on that basis. LaBelle's motion fails to properly distinguish between the tests of probable cause and good faith. Instead, he blurs the distinction and simply suggests that the affidavit so obviously failed to establish probable cause that the good-faith exception cannot apply. He claims that "the affidavit was so lacking in probable cause as to render unreasonable, and not in good faith, the officer's reliance on the warrant obtained through this affidavit." (7/9/2008 Mot. at 5.) He also claimed that the affidavit "so lacked the indicia of probable cause as to demonstrate that the magistrate abandoned the judicial role of finding probable cause." (*Id.* at 4.)

The *Weber* court concluded that the good faith exception could not apply because the government's actions were not objectively reasonable:

> At the time Burke applied for the warrant, the law was clear that a warrant could not be broader than the probable cause on which it was based . . . And particularly significant is that since the government planned the undercover delivery of the items that provided the occasion for the search, the government had complete control over the timing of the search. Under these circumstances, there was no need for the "hurried judgment" upon which law

> enforcement decisions must often be based. Although we do not question the subjective good faith of the government, it acted entirely unreasonably in preparing the affidavit it presented. The foundationless expert testimony may have added fat to the affidavit, but certainly no muscle. Stripped of the fat, it was the kind of "bare bones" affidavit that is deficient under *Leon*.

923 F.2d at 1346.

The Sixth Circuit has stated that affidavits "that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). "An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) (citing *Aguilar*, 378 U.S. at 114).

The affidavit in this case was not a "bare bones" affidavit. Detective Tuski's affidavit was based largely on LaBelle's actual possession of child pornographic materials on May 1, 2007. The government was not conducting an undercover operation and in no way provided the occasion by which LaBelle's residence could be searched and the defendant could be found in possession of illegal materials. The conclusions reached by the *Weber* court regarding the good-faith exception are simply not applicable to the facts of LaBelle's case.

Even if the magistrate judge lacked a substantial basis to find probable cause to search LaBelle's residence, no "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *McPhearson*, 469 F.3d at 525. It would be clear to any such officer that the warrant in this case did not rely on Detective Tuski's "bare conclusions or suppositions," but rather "particularized facts"

indicating "veracity, reliability, and basis of knowledge." *Id.* at 526. The facts laid out by Tuski were not "so vague . . . as to be conclusory or meaningless." *Carpenter*, 360 F.3d at 596. Rather, Detective Tuski wrote several pages of discrete facts about LaBelle and included a specific rationale for why the evidence sought in the warrant would be found at his residence.

LaBelle's case plainly fails to implicate any of the situations in which the Sixth Circuit will not apply the good faith exception: (1) the affidavit did not contain information that Detective Tuski knew or should have known to be false; (2) there was no evidence suggesting that the issuing magistrate abandoned his judicial role; (3) the affidavit was so detailed and specifically oriented to LaBelle that it contained more than adequate indicia of probable cause and could not possibly be classified as "bare bones"; and (4) the warrant was not facially deficient such that executing law enforcement officers could not reasonably presume its validity. *See Washington*, 380 F.3d at 241. Accordingly, even if the court concluded that the magistrate lacked a substantial basis to find probable cause to search LaBelle's house, the executing officers' reliance on the search warrant was objectively reasonable. The evidence obtained pursuant to the search warrant should not be suppressed, and Labelle's motion must be denied.

## IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion to Suppress Illegally Seized Evidence" [Dkt. # 22] is DENIED.

             S/Robert H. Cleland
             ROBERT H. CLELAND
             UNITED STATES DISTRICT JUDGE

Dated: August 13, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 13, 2008, by electronic and/or ordinary mail.

                                                 S/Lisa Wagner
                                                 Case Manager and Deputy Clerk
                                                 (313) 234-5522